## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| CARRIE MICHAELS, <br> MICHAEL ASHLEY, and <br> MARADA ZUMBAHLEN, <br> <br> Plaintiffs, <br> <br> v. <br> <br> GENETIC DESIGN, INC., <br> GENZYME CORPORATION, <br> LABORATORY CORPORATION OF AMERICA <br> d/b/a LABCORP, <br> HSHS ST. ANTHONY'S MEMORIAL HOSPITAL <br> f/k/a EFFINGHAM MEDICAL CENTER, <br> SANOFI-AVENTIS, LLC, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No. 3:23-cv-2021 <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Genzyme Corporation and sanofi-aventis U.S. LLC[1] (collectively, "Sanofi"), hereby remove this action to the United States District Court for the Southern District of Illinois.[2] As grounds for removal, Defendants state:

### BACKGROUND

1. In the Complaint, **Exhibit 1**,[3] Plaintiffs allege that Plaintiff Carrie Michaels was born in 1985 to Plaintiffs Marada Zumbahlen and Michael Ashley. Compl. ¶ 14.

---

[1] sanofi-aventis U.S. LLC is improperly identified as Sanofi-Aventis LLC in the Complaint.

[2] Nothing in this Notice of Removal or related documents shall be interpreted as a waiver or relinquishment of Sanofi's right to assert any defense or affirmative matter in this proceeding. If any question arises as to the propriety of this removal, Sanofi respectfully requests the opportunity to conduct discovery or brief any disputed issues and to present oral argument in support of its position that this case is property removable. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

[3] The Civil Cover Sheet for this matter is being filed as **Exhibit 2**.

2. Sometime after Ms. Michaels' birth, Ms. Zumbahlen and Mr. Ashley married. *Id*. ¶ 14.

3. Plaintiffs allege that on April 13, 1989, Marada Zumbahlen and Michael Ashley had a DNA paternity test performed on Mr. Ashley to determine whether he was the biological father of Ms. Michaels. *Id*. ¶ 16.

4. According to the Complaint, Mr. Ashley and Ms. Michaels had their blood drawn at Defendant HSHS St. Anthony's Memorial Hospital f/k/a Effingham Medical Center, and Genetic Design, Inc. performed the testing and evaluated the blood to determine whether Mr. Ashley was Ms. Michaels' biological father. *Id*. ¶ 16.

5. On May 18, 1989, Plaintiffs allegedly received the test results, which indicated there was a 0% probability that Mr. Ashley was Ms. Michaels' biological father. *Id*. ¶ 18.

6. On September 26, 1991, Mr. Ashley and Ms. Zumbahlen allegedly divorced. *Id*. ¶ 19.

7. According to the Complaint, Ms. Zumbahlen then married James Zumbahlen, who over the next twelve years physically, emotionally, and sexually abused and assaulted Ms. Michaels, and Ms. Michaels witnessed Mr. Zumbahlen do the same to other minors. *Id*. ¶ 21. Mr. Zumbahlen ultimately pled guilty to nine counts of child sex offenses and was sentenced to 25 years in prison. *Id*. ¶ 22.

8. On July 10, 2021, Ms. Michaels was allegedly informed of an ancestral connection between her and Mr. Ashley's aunt. *Id*. ¶ 23.

9. Thereafter, Ms. Michaels allegedly contacted Mr. Ashley, and they both agreed to undergo additional DNA testing. *Id*. ¶ 24.

10. Per the Complaint, the DNA test revealed a 99.9999997% probability that Mr. Ashley was Ms. Michaels' biological father. *Id.* ¶ 26.

11. Plaintiffs then filed this action in the Circuit Court of Twentieth Judicial Circuit, St. Clair County, Illinois, on or about May 5, 2023.

12. The attached Complaint was served upon sanofi-aventis U.S. LLC on May 15, 2023. **Exhibit 3**.

13. The attached Complaint was served upon Genzyme Corporation on May 16, 2023. **Exhibit 4.**

14. In the Complaint, Plaintiffs allege three claims against all Defendants: (1) res ipsa loquitur; (2) negligence; and (3) Illinois consumer fraud. *Id.* ¶¶ 32–41. Plaintiffs' negligence claims (Counts I and II) arise from Plaintiffs' allegations that "Defendants owed a duty to the Plaintiffs to conduct accurate DNA testing for the purposes of determining the paternity of Plaintiff, Carrie Michaels." *Id.* ¶ 29. The consumer fraud claim arises from Plaintiffs' allegations that "Defendants falsely ensured that their testing methods would produce accurate results." *Id.* ¶ 39.

15. As a result of the allegedly erroneous paternity test, Plaintiffs seek damages for the denial of a biological parent-child relationship between Ms. Michaels and Mr. Ashley, the destruction of the marriage between Mr. Ashley and Ms. Zumbahlen, the "severe physical, mental, and sexual abuse and assault" Ms. Ashley would not have suffered at the hands of Mr. Zumbahlen had there not been an erroneous paternity test, as well as "great mental anguish and guilt." *Id.* ¶ 31.

## VENUE AND JURISDICTION

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, 1441(a), and 1446(a) because the Circuit Court of St. Clair County, Illinois, where the Complaint was filed, is a state court within the Southern District of Illinois.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because (1) there is complete diversity between Plaintiffs and properly joined Defendants; (2) the amount in controversy exceeds $75,000, exclusive of costs and interests; and (3) all other requirements for removal have been satisfied.

## BASIS OF REMOVAL

**I. There is Complete Diversity of Citizenship Between Plaintiffs and All Properly Joined Defendants.**

18. The Court has diversity jurisdiction over this matter because there is complete diversity of citizenship between Plaintiffs and the properly joined Defendants.

19. According to the Complaint, Plaintiffs are residents and citizens of Effingham, Illinois. Compl. ¶ 1; *see Cassens v. Cassens*, 430 F. Supp. 2d 830, 833 (S.D. Ill. 2006) ("'Citizenship' for diversity purposes is determined of course by a party's domicile, which means the state where a party is physically present with an intent to remain there indefinitely." (internal citations omitted)).

20. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21. A limited liability company, by contrast, is a citizen of every state in which its members are citizens. *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) ("The citizenship for diversity purposes of a limited liability company, however, despite the resemblance

4

of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members.").

22.     Defendant sanofi-aventis U.S. LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Bridgewater, New Jersey. The sole member of sanofi-aventis U.S. LLC is Sanofi US Services Inc., a Delaware corporation with its principal place of business in New Jersey. Defendant sanofi-aventis U.S. LLC is therefore a citizen of Delaware and New Jersey.

23.     Defendant Genetic Design, Inc. used to be a Minnesota corporation with its principal place of business in North Carolina. Genetic Design no longer exists as it merged with Genzyme Corporation in 1998. To the extent that its citizenship should be considered, it was a citizen of Minnesota and North Carolina.

24.     Defendant Genzyme Corporation is incorporated in Massachusetts and has its principal place of business in Massachusetts. Defendant Genzyme Corporation is therefore a citizen of Massachusetts.

25.     Defendant Laboratory Corporation of America is a Delaware corporation with its principal place of business in Burlington, North Carolina. Defendant Laboratory Corporation of America is therefore a citizen of Delaware and North Carolina.

26.     Defendant HSHS St. Anthony's Memorial Hospital f/k/a Effingham Medical Center is an Illinois not-for-profit corporation with its principal place of business in Effingham, Illinois. Defendant HSHS St. Anthony's Memorial Hospital f/k/a Effingham Medical Center ("HSHS") is therefore a citizen of Illinois.

27.     Sanofi asserts that HSHS has been improperly joined as a defendant in this action in order to defeat diversity.

28. Fraudulent joinder "exists if the claims against the nondiverse defendant have no chance of success." *Scheinman v. BMW of N. Am., LLC*, No. 10-C-4848, 2010 WL 3937489, at *2 (N.D. Ill. Sept. 30, 2010). To invoke fraudulent joinder, a removing defendant must show that "'after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant' . . . [f]ramed a different way, the . . . court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 764 (7th Cir. 2009) (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)). If the removing defendant meets this threshold burden, the court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* at 763 (internal quotation and citation omitted); *see also Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) ("Because the district court may 'disregard' the nondiverse defendant, we have described the fraudulent joinder doctrine as an 'exception' to the requirement of complete diversity.").

29. Plaintiffs' claims against HSHS have no chance of success, for three reasons.

30. First, Plaintiffs' claims against HSHS are barred by the four-year statute of repose applicable to claims "arising out of patient care" against a hospital. *See* 735 Ill. Comp. Stat. 5/13-212; *Vivod v. Howmedica Osteonics Corp.*, No. 15-cv-1207, 2016 WL 304876, at *2 (S.D. Ill. Jan. 26, 2016) ("The Illinois healthcare statute of repose provides for a four year deadline to bring a health-related case against a hospital—no action for damages can 'be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action.'" (citing 735 Ill. Comp. Stat. 5/13-212)).

31. Plaintiffs' claims against HSHS are health-related and arise from patient care because they relate to a blood draw allegedly taken at the hospital in 1989. *See Orlak v. Loyola University Health System*, 228 Ill.2d 1, 16 (Ill. 2007) ("The only allegation 'arising out of patient care' simply requires a causal connection between the patient's medical care and the alleged injury."); *cf. Stiffler v. Lutheran Hosp.*, 965 F.2d 137, 141 (7th Cir. 1992) (noting that a claim against a hospital gift shop, for example, may not arise from patient care if nonprescription medicine it sold to general public was proved harmful to consumers).

32. Because Plaintiffs' claims arose from a health-related case against HSHS, they are governed by 735 Ill. Comp. Stat. Ann. 5/13-212(a) and had to be filed within 4 years of the blood draw, or by 1993. Yet, Plaintiffs did not file their claims until 2023—30 years too late. *See Vivod*, 2016 WL 304876, at *2 (finding claims barred by the statute of repose because they were brought more than four years after the alleged negligence of the hospital in implanting a device occurred); *Dellamano v. CR Bard, Inc.*, No. 14-cv-1329, 2015 WL 682157, *1–2 (S.D. Ill. Feb. 17, 2015) (finding hospital was fraudulently joined where lawsuit was filed more than four years after medical device was implanted).[4]

33. To the extent Ms. Michaels' argues she was a minor at the time the statute of repose ran and therefore it was extended until she reached the age of majority, her claims still expired, at the latest, upon her 22nd birthday in 2007. *See* 735 Ill. Comp. Stat. Ann. 5/13-212(b) (allowing a minor to bring a claim within 8 years of the alleged action causing the injury, "provided, however, that in

---

[4] The fact that Plaintiffs may not have been aware of their cause of action does not toll the statute of repose. *See Orlak*, 228 Ill.2d at 7-8 (recognizing the discovery rule does not apply to the statute of repose that therefore it "sometimes bars actions even before the plaintiff has discovered the injury."); *Vivod*, 2016 WL 304876, at *2 ("The Illinois healthcare repose provision is different from the healthcare limitations provision: unlike the limitations provision, the repose period doesn't start when the plaintiff discovers the harm, but instead is triggered by the occurrence of the act that caused the injury.").

no event may the cause of action be brought after the person's 22nd birthday."). Plaintiffs have not pled any other allegations of disability that would toll the period of repose beyond this timeline.

34. Because Plaintiffs' claims against HSHS are barred by Illinois' statute of repose applicable to claims arising from patient care, it is fraudulently joined in this action and should be disregarded for purposes of diversity. Indeed, "if the limitations problem is clear from the face of the complaint, a limitations problem is proper grist for a fraudulent joinder dismissal." *Vivod*, 2016 WL 304876, at *2 (retaining jurisdiction over case where claims against hospital were fraudulently joined because the face of the complaint revealed such claims were barred by the four-year statute of repose); *LeBlang Motors, Ltd. v. Subaru of America, Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) ("If the time to bring the cause of action had expired, then the district court was correct in dismissing [the non-diverse defendants] as fraudulently joined").

35. Second, Illinois law requires plaintiffs bringing medical negligence claims to submit an affidavit prepared by a health professional who has "reviewed the facts of the case" and "reasonably believes . . . that there is a reasonable and meritorious cause for the filing" of the lawsuit. *See* 735 Ill. Comp. Stat. § 5/2-622(a) ("In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing malpractice, the plaintiff's attorney . . . shall file an affidavit, attached to the original and all copies of complaint), (c) (requiring a certification if the plaintiff intends to rely on the doctrine of "res ipsa loquitur").

36. Plaintiffs have not filed the required affidavit so they are unable to maintain their claim against HSHS as a matter of law. *See Hahn v. Walsh*, 762 F.3d 617, 633 (7th Cir. 2014) ("[T]he district court properly dismissed the plaintiffs' wrongful death claim against [the medical facility] because the plaintiffs had failed to attach the required affidavit and report.").

37. Third, all of Plaintiffs' claims against HSHS fail on their face. In order to state a proper claim against HSHS, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" and allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and threadbare recitals of elements, supported by mere conclusion, simply do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citation omitted). Rather, Federal Rule of Civil Procedure 8 "'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented.'" *Id.* at 555 n.3 (citation omitted). Plaintiffs' allegations against HSHS fail to set forth facts to support their legal conclusions and should be dismissed for failure to state a claim. *Id.* at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

38. Aside from stating that HSHS was the healthcare provider that drew Plaintiffs' blood, Plaintiffs do not assert any facts connecting HSHS's conduct to the individual claims asserted in the Complaint. *See The City of Waukegan v. Bond Safeguard Ins. Co.*, No. 15-C-3007, 2015 WL 6870106, at *3 (N.D. Ill. Nov. 6, 2015) (finding a defendant fraudulently joined where it alleged only that it was a subsidiary of another defendant but did not allege any specific allegations against the forum defendant). Instead, the Complaint alleges that the testing company, allegedly Genetic Design, Inc. (and therefore its successor companies), did not properly administer and perform the DNA test.

39. Plaintiffs cannot maintain a claim for "res ipsa loquitur" against HSHS, for example, because "[r]es ipsa loquitur, although often pleaded separately from an ordinary negligence claim, is not truly an independent cause of action, but rather a 'rule of evidence relating to the sufficiency of

9

plaintiff's proof' to establish a defendant's negligence." *Krivokuca v. City of Chicago*, 2017 IL App (1st) 152397 ¶ 43 (1st Dist. 2017) (citing *Collins v. Superior Air- Ground Ambulance Servs., Inc.*, 338 Ill. App. 3d. 812, 816 (1st Dist. 2003)). The purpose of the doctrine is to allow "proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Id.*; *see also Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 625 (7th Cir. 2019) ("Res ipsa loquitur describes not a substantive claim, but a manner of proceeding on that claim."). This claim is therefore simply another way of proving negligence; it is not an independent cause of action.

40.     As for Plaintiffs' negligence claim against HSHS, Plaintiffs have not alleged that HSHS owed any duty to Plaintiffs, much less that it breached that duty. The only specific allegation about HSHS in the Complaint is that Plaintiffs' blood was drawn at its hospital. Compl. ¶16. Because Plaintiffs have not pled any of the negligence elements related to its healthcare treatment of Plaintiffs, Plaintiffs cannot prove that HSHS owed them a duty. *See Blagden v. McMillin*, 2023 IL App (4th) 220238, ¶ 42 (4th Dist. 2022) ("a plaintiff must prove a duty owed by the defendant physician to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and resultant damages."). For these same reasons, nothing in Plaintiffs' Complaint suggests that HSHS breached any duty owed to Plaintiffs. *Id*.

41.     Finally, Plaintiffs cannot maintain a consumer fraud claim against HSHS. Under Rule 9(b) of the Federal Rules of Civil Procedure, a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." In other words, a plaintiff must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). Plaintiffs have failed to do so here. Not only do Plaintiffs fail to identify which specific

Defendant "falsely ensured that their testing methods would produce accurate results," they also do not identify specific statement or advertisement that made such an assurance, or plead when, where, or how Plaintiffs saw the alleged statement. *See WFS Fin. vs. South Chicago Dodge*, No. 01-C-3354, 2001 WL 1002463, *4 (N.D. Ill. Aug. 31, 2001) ("Plaintiffs cannot stand on the blanket assertion that the Dealer Invoices were 'altered and/or false.'").

42. Plaintiffs also have not sufficiently alleged facts supporting the elements of common law fraud. These elements include: "(1) false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648 (2001). Plaintiffs' Complaint alleges only that "Defendants falsely ensured that their testing methods would produce accurate results." Compl. ¶ 39. But according to the Complaint, Genetic Design, Inc., not HSHS, performed the testing that resulted in the allegedly erroneous results, and so it necessarily follows that HSHS could not have made any false or misleading statements regarding such tests to Plaintiffs that would allow Plaintiffs to maintain a consumer fraud claim against it.

43. While Plaintiffs may claim that they can amend their Complaint to rectify the pleading deficiencies against HSHS, a defendant "need not negate any possible theory that [the plaintiff] might allege in the future: only [the plaintiff's] present allegations count." *Poulos*, 959 F.2d at 74. "Put another way, the Court may find fraudulent joinder without deciding whether the problem in a plaintiff's complaint can be cured by amending it." *Hale v. China Online, Inc.*, No. 08-C-5548, 2009 WL 2601357, at *2 (N.D. Ill. Aug. 21, 2009), *aff'd sub nom. Hale v. Victor Chu*, 614 F.3d 741 (7th Cir. 2010) (citing *Poulos*, 959 F.2d at 74).

44.     Because Plaintiff cannot maintain a negligence (under a res ipsa or other theory) or consumer fraud claim against HSHS, HSHS was improperly joined, and its citizenship should be ignored for purposes of determining diversity.

45.     Absent the presence of HSHS, complete diversity between the parties exists.

**II.     The Amount in Controversy Exceeds $75,000.**

46.     Plaintiffs' claims also satisfy the amount-in-controversy requirement set forth in 28 U.S.C. § 1332(a).

47.     "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Owens*, 574 U.S. at 89.

48.     Here, Plaintiffs' Complaint alleges that as a result of the erroneous test results, "Plaintiffs suffered substantial damages" "in excess of the jurisdictional amount for [St. Clair County]." Compl. at 8, These damages include the denial of a biological parent-child relationship between Ms. Michaels and Mr. Ashley, the destruction of the marriage between Mr. Ashley and Ms. Zumbahlen, "severe physical, mental, and sexual abuse and assault" as a result of the erroneous test, as well as "great mental anguish and guilt." Compl. ¶ 31.

49.     Should Sanofi be liable for all the damages claimed, including for the physical, mental, and sexual abuse Ms. Michaels suffered at the hands of Mr. Zumbahlen, as well as the emotional damages endured by years of strained relationships between all Plaintiffs, the jurisdictional amount is clearly met. *See Metro. Cas. Ins. Co. v. Keppner*, No. 1:18-CV-1401, 2019 WL 5455007, at *2 (C.D. Ill. Apr. 5, 2019) (finding the amount-in-controversy requirement met where plaintiffs alleged that the injured suffered "serious physical injuries and mental anguish, has been diagnosed with post-traumatic stress disorder, and continues to suffer ill effects from the [car] accident").

50.     Sanofi need not confirm through discovery in the state court action that the jurisdictional amount is satisfied. Indeed, "a defendant who wishes to remove a case to federal court cannot 'wait for discovery responses that simply confirm what was obvious from the face of the complaint; in such cases, defendants are not insulated from a remand to state court.' It is not the law that 'cases are not removable until there has been an absolute affirmation via discovery . . . that more than $75,000 [is] in issue.'" *Fields v. Jay Henges Enters., Inc.*, No. 06-323, 2006 WL 1875457, at *3 (S.D. Ill. June 30, 2006) (quoting *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002)).

51.     Because Plaintiffs' claimed damages easily exceed the $75,000 jurisdictional threshold, the amount-in-controversy requirement is met.

### III.    The Other Requirements for Diversity Jurisdiction are Met.

52.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on Defendants is **Exhibit 5**.

53.     This removal is timely, as it has been filed within 30 days of Defendants being served with the Complaint. 28 U.S.C. § 1446(b).

54.     All Defendants, through counsel, have consented to removal.

55.     This Court therefore has original jurisdiction under the provisions of 28 U.S.C. § 1332 because the matter in controversy, exclusive of interest and costs, exceeds $75,000 and is between citizens of different states.

Wherefore, Defendants respectfully request that this Court acknowledge jurisdiction over this action and allow removal to this Court for a determination of all issues involved.

|  |  |
|---|---|
| Dated: June 13, 2023 | By: /s/ Tyler W. Schwettman |
|  | Tyler W. Schwettman (6333327) |
|  | **SHOOK, HARDY & BACON L.L.P.** |
|  | The Plaza in Clayton |
|  | 190 Carondelet Plaza, Suite 1350 |
|  | St. Louis, MO 63105 |
|  | Telephone: (314) 690-0200 |
|  | tschwettman@shb.com |

*Attorneys for Genzyme Corporation and sanofi-aventis U.S. LLC*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on the below Plaintiffs' counsel by first-class mail and electronic mail on June 13, 2023.

Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
**Gianaris Trial Lawyers, LLC**
One Court Street
Alton, IL 62002
Ph: (618) 619-0010
tgianaris@lawforpeople.com
jedelson@lawforpeople.com

*Attorneys for Plaintiffs*

/s/ Tyler W. Schwettman