IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Carrie Michaels, Michael Ashley, and Marada Zumbahlen, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>Genzyme Corporation, as successor in interest to Genetic Design, Inc., and Laboratory Corporation of America Holdings, *d/b/a* LabCorp, as successor in interest to Physicians Clinical Laboratories, Inc., <br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No.: 3:23-cv-02021<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SECOND *AMENDED* COMPLAINT**

　　Plaintiffs, Carrie Michaels, Michael Ashley, and Marada Zumbahlen ("Plaintiff" or collectively "Plaintiffs"), through Ted N. Gianaris and Joshua A. Edelson of Gianaris Trial Lawyers, LLC, and as a matter of course pursuant to FRCP Rule 15(a)(1)(a-b), state and allege as follows for their Second *Amended* Complaint against the Defendants named herein:

NATURE OF THE CASE

　　This is a case brought by the thirty-seven-year-old daughter Carrie Michaels, her mother, Marada Zumbahlen, and her biological father, Michael Ashley. Years ago, when Carrie Michaels was a minor child, the Defendants acted together to provide paternity DNA testing and associated services to the family of Carrie Michaels, Michael Ashley, and Marada Zumbahlen. The DNA results improperly indicated that Michael Ashley was not Carrie Michaels' biological father. Michael Ashley and Marada Zumbahlen divorced because of the faulty test results and Carrie Michaels had no further relationship with Michael Ashley. Marada Zumbahlen then married the man who was confirmed, until recently, to be Carrie Michaels's father who severely abused Carrie

Michaels throughout her childhood. As an adult, Carrie Michaels did a popular ancestry DNA test and was eventually alerted by the genetic test company that Michael Ashley's aunt had an ancestral link with her. Carrie Michaels then contacted Michael Ashley and they did further DNA testing. The further testing showed that Michael Ashley was in fact Carrie Michaels' father. The Defendants' faulty testing and/or procedures when Carrie Michaels's was a child deprived her of a relationship with her father Michael Ashley for decades and put her in harms way with an abusive stepfather. It also deprived Michael Ashley a relationship with his biological daughter. The time has now come for the Defendants to take responsibility for their mistake and the life-long damages, injuries, and pain it has caused Plaintiffs.

PARTIES, JURISDICTION & VENUE

1. Plaintiffs are now, and at all relevant times herein, residents and citizens of Effingham, State of Illinois.

2. Plaintiff, Carrie Michaels, is the biological daughter of Plaintiffs, Michael Ashley and Marada Zumbahlen.

3. Defendant, Genzyme Corporation ("Genzyme"), as successor in interest to Genetic Design, Inc. ("Genetic Design"), is a Massachusetts corporation with its principal place of business in North Carolina.

4. On information and belief, Genzyme acquired and/or merged with Genetic Design, Inc. sometime around 1995.

5. Defendant, Laboratory Corporation of America Holdings, *d/b/a* LabCorp ("LabCorp"), as successor in interest to Physicians Clinical Laboratories, Inc. ("Physicians"), is a Delaware corporation with its principal place of business in North Carolina.

6. On information and belief, Physicians Clinical Laboratories, Inc. was acquired by and/or merged with LabCorp at some point in time.

7. This Court has specific personal jurisdiction over all the aforementioned Defendants (collectively "Defendants"), pursuant to and consistent with, 735 ILCS 5/2-209, and the United States and Illinois constitutional requirements of Due Process, in that all Defendants, individually or acting through their apparent agents:

   a. Transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1); and/or,
   b. Committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2); and/or,
   c. Owned, used, or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3); and/or,
   d. At all relevant times, it was foreseeable to each Defendant that its tortious acts and/or their transaction of business in the State of Illinois would have consequences such that all Defendants could reasonably foresee being hauled into Court in the State of Illinois; and,
   e. Requiring Defendants to litigate this claim in the State of Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

## FACTS

8. Plaintiff, Carrie Michaels (born and formerly known as Carrie L. Ashley), was born on September 15, 1985, to Plaintiffs, Marada Zumbahlen (formerly known as Marada Ashley) and Michael Ashley. Sometime thereafter, Plaintiffs, Marada Zumbahlen and Michael Ashley, became married.

9. Sometime thereafter there became a belief that Plaintiff, Carrie Michaels, may not be the biological daughter of Plaintiff, Michael Ashley, and that a man by the name of James Zumbahlen was.

10. Then, on April 13, 1989, and by agreement and consent of Plaintiffs, Marada Zumbahlen and Michael Ashley had, and paid out-of-pocket, for a private DNA paternity test performed whereby Plaintiffs' blood was drawn at Physicians Clinical Laboratories, Inc. in

Effingham, Illinois and the paternity evaluation was performed by Genetic Design to determine whether Michael Ashley was the biological father of Carrie Michaels, who was three years old the time.

11. Defendants, by and through their agents, employees, and/or successors, collected blood samples and contracted for testing from the Plaintiffs within the State of Illinois.

12. Then, on May 18, 1989, Plaintiffs received the test results, which excluded Plaintiff, Michael Ashley, as the biological father of Plaintiff, Carrie Michaels, and according to the test showed the probability of paternity between Carrie Michaels and Michael Ashley to be 0%. (*See* Exhibit A, attached).

13. Plaintiffs relied on the test results and went on with their respective lives believing the results to be true and conclusive.

14. Then, on September 26, 1991, Plaintiffs, Marada Zumbahlen and Michael Ashley, divorce became final, and the corresponding Judgment Order determined and confirmed, based on conclusive evidence, that Michael Ashley was not the biological father of Carrie Michaels. (*See* Exhibit B, attached).

15. Plaintiff, Marada Zumbahlen, relying on the conclusive test results, believing the test results to be true, and with the belief and confirmation that James Zumbahlen was the biological father of Carrie Michaels, married James Zumbahlen.

16. On September 22, 1995, and pursuant to the conclusive paternity test results and prior court orders, an Order of Parentage was entered in Effingham County Circuit Court that ordered, adjudged, and confirmed James Zumbahlen as the natural father of Carrie Michaels and changed Carrie Michael's name to Carrie Zumbahlen. (*See* Exhibit C, attached).

17. Additionally, on March 23, 2011, a revised Birth Certificate was issued for Carrie Michaels to indicate and confirm that James D. Zumbahlen was the father of Carrie Michaels (then Carrie L. Zumbahlen). (*See* Exhibit D, attached).

18. Plaintiff, Carrie Michaels, who was a minor, was physically, emotionally, and sexually abused and assaulted by James Zumbahlen and witnessed him physically, emotionally, and sexually abuse and assault other minors.

19. Then, on May 5, 2014, James Zumbahlen pleaded guilty to nine counts of child sex offenses in exchange for a prison sentence amounting to 25 years.

20. Then, on or about July 10, 2021, Plaintiff, Carrie Michaels, was informed of a possible ancestral connection on Ancestry.com between her own daughter and Ann Hess, Michael Ashley's aunt.

21. Plaintiff, Carrie Michaels, sometime thereafter contacted Plaintiff, Michael Ashley, to inform him of the ancestral connection she received from Ancestry.com and to see whether Michael Ashley would be willing to have a DNA test performed to see whether he was or was not Carrie Ashley's biological father.

22. Plaintiff, Michael Ashley, agreed and both Carrie Michaels and Michael Ashley submitted blood drawings and DNA analysis with LabCorp and Sterling TEK.

23. Then, on August 5, 2021, Plaintiffs received the tests results from Sterling TEK, which showed there was a 99.9999997% probability that Michael Ashley was the biological father of Carrie Michaels. (*See* Exhibit E, attached).

24. And, on December 22, 2021, Plaintiffs received the test results back from LabCorp, which also showed there was a 99.99% probability that Michael Ashley was the biological father of Carrie Michaels. (*See* Exhibit F, attached).

25. As a result, the test result conducted by Defendants in 1989 was erroneous and Michael Ashley is, in fact, the biological father of Carrie Michaels.

26. Defendants owed a duty to the Plaintiffs to conduct accurate DNA testing for the purposes of determining the paternity of Plaintiff, Carrie Michaels.

27. Defendants, jointly and severally, and by and through their agents and/or employees, breached its duties to the Plaintiffs when it performed and issued its erroneous DNA report to the Plaintiffs in 1989, which conclusively excluded Michael Ashley as the biological father of Carrie Michaels.

28. As a direct and proximate result of Defendants' collection errors and/or erroneous DNA testing and result, Plaintiffs have suffered damages as follows:

   a. For over 30 years, Carrie Michaels and Michael Ashley were denied a biological parent and child relationship and family with each other;
   b. Marada Zumbahlen's relationship with the biological father of Carrie Michaels, Michael Ashley, was terminated due to the belief that he was not the father of the minor child;
   c. Carrie Michaels had to endure severe physical, mental, and sexual abuse and assault at the hands of James Zumbahlen and as a result severe mental anguish and guilt suffered by Michael Ashley in feeling that he should have been there for his biological daughter and was prevented;
   d. Were denied the emotional support and help needed while raising the child and that a daughter would need from her father while growing up;
   e. Suffering great mental anguish and guilt since learning that Michael Ashley is, in fact, the biological father of Carrie Michaels.

**COUNT 1 – NEGLIGENCE (*RES IPSA LOQUITUR*)**
(*Plaintiffs v. All Defendants*)

29. Plaintiffs repeat and reallege all paragraphs above as if plainly set forth herein.

30. Defendants, by and through its agents and employees, had exclusive control over each and every aspect of the DNA test that was administered in 1989.

31. Plaintiffs had no control of any aspect of the DNA test.

32.     In the normal course of DNA testing that is performed without negligence, Plaintiffs' injuries would not have occurred if Defendants had used ordinary care throughout the course of the DNA test that was administered, which was exclusively under the control and management of Defendants and produced an incorrect result.

WHEREFORE, Plaintiffs pray this Court to enter judgment in their favor and against all Defendants, jointly and severally, and to award compensatory damages in excess of the jurisdictional amount for this Court and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 2 – NEGLIGENCE
### (*Plaintiffs v. All Defendants*)

33.     Plaintiffs repeat and reallege paragraphs 1-28 as if plainly set forth herein.

34.     As a direct and proximate result of Defendants' collection errors and/or erroneous DNA testing and result, Plaintiffs suffered damages as set forth above.

WHEREFORE, Plaintiffs pray this Court to enter judgment in their favor and against all Defendants, jointly and severally, and to award compensatory damages in excess of the jurisdictional amount for this Court and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT 3 – ILLINOIS CONSUMER FRAUD ACT
### (*Plaintiffs v. All Defendants*)

35.     Plaintiffs repeat and reallege paragraphs 1-28 as if plainly set forth herein.

36.     Defendants falsely ensured that their testing and collection methods would produce accurate results and Plaintiffs relied on such before purchasing and utilizing the testing offered by Defendants.

37.     The false and incorrect test results were forwarded to Plaintiffs.

38. Plaintiffs suffered substantial damages proximately caused by the publication of said false results as set out above.

WHEREFORE, Plaintiffs pray this Court to enter judgment in their favor and against all Defendants, jointly and severally, and to award compensatory damages in excess of the jurisdictional amount for this Court and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
Joshua A. Edelson, IL #6326848
Ted N. Gianaris, IL #6237156
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on August 30, 2023.

*/s/ Joshua A. Edelson*
**Gianaris Trial Lawyers, LLC**