IN THE UNITED STATES DISTRICT COURT19-
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARRIE MICHAELS, MICHAEL ASHLEY, and MARADA ZUMBAHLEN,<br><br>           Plaintiff,<br><br>v.<br><br>GENZYME CORPORATION, as Successor in Interest to GENETIC DESIGN, INC.,<br><br>           Defendants. | Case No. 23-cv-2021-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant, Genzyme Corporation, as successor in interest to Genetic Design, Inc. ("Genzyme") (Doc. 58). For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

### PROCEDURAL BACKGROUND

On June 13, 2023, this action was removed from the Twentieth Judicial Circuit, St. Clair County, Illinois (Doc. 1). Since removal, plaintiffs Carrie Michaels ("Carrie"), Michael Ashley ("Michael"), and Marada Zumbahlen ("Marada"), (collectively known as "plaintiffs"), have amended their pleading on three separate occasions.

On November 16, 2023, plaintiffs filed their third amended complaint against Genzyme[1] (Doc. 53). Within this pleading, plaintiffs have asserted the following causes of action: (1) Negligence (*Res Ipsa Loquitur*); (2) Negligence; and, (3) Illinois Consumer Fraud Act (*Id.*).

On November 20, 2023, Genzyme filed a motion to dismiss the third amended complaint, raising four arguments (Doc. 55). Fist, Genzyme argued that plaintiffs could not assert an independent cause of action for *res ipsa loquitur* (*Id.*). Second, Genzyme argued that plaintiffs failed to satisfy the heightened pleading standard for fraud under Rule 9(b) (*Id.*). Third, Genzyme claimed that the applicable statutes of limitations barred plaintiffs claims (*Id.*). Fourth, Genzyme asserted that plaintiffs could not prove that any purported damages were proximately caused by Genzyme's alleged negligence (*Id.*).

On November 21, 2023 plaintiffs filed their response in opposition to the motion to dismiss (Doc. 57). Within the response, plaintiffs conceded that the pleading did not allege sufficient facts to support a fraud claim and requested dismissal of Count 2 without prejudice[2] (*Id.*). Plaintiffs rebutted the other three arguments raised by Genzyme (*Id.*).

On November 27, 2023, Genzyme filed its reply in support of its motion to dismiss (Doc. 58). Specifically, Genzyme rebutted plaintiffs' response and reasserted its prior arguments (*Id.*).

---

[1] Although the various complaints have asserted causes of action against differing defendants as well as their successors in interest, the most recent pleading only identifies Genzyme.

[2] Although the response referred to Count 2, the Court is constrained to note that Count 3, not 2, of the third amended complaint was brought pursuant to the Illinois Consumer Fraud Act.

## STATEMENT OF THE CASE

The following facts are taken from plaintiffs' third amended complaint (Doc. 53) and are accepted as true for purposes of Genzyme's motion to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

This action arises out of a paternity test that was conducted in 1989 wherein blood was drawn at Physicians' Clinical Laboratories, Inc. in Effingham, Illinois and the evaluation was performed by Genetic Design (Doc. 53, ¶8). The test result concluded that there was zero probability that Michael was Carrie's biological father (*Id.*, ¶10). Shortly thereafter, Michael and Marada divorced, with Marada going on the marry James Zumbahlen, who was judicially determined to be the father of Carrie.

In 2021, Carrie was advised by Ancestry.com of a possible ancestral connection between her daughter and Michael's aunt[3] (*Id.*, ¶18). Carrie and Michael submitted blood draws and underwent additional DNA analysis (*Id.*, ¶20). On August 5, 2021, test results showed a 99.9999997% probability that Michael was Carrie's biological father (*Id.*, ¶21). On December 22, 2021, another test revealed a 99.99% probability that Michael was Carrie's biological father (*Id.*, ¶22).

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008)

---

[3] Carrie had purchased the ancestry DNA test for her daughter.

(*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.,* 589 F.3d 901 (7th Cir. 2009).

## ANALYSIS

As set forth *infra,* Genzyme raised four issues in their motion to dismiss.

### I. Negligence

Plaintiffs asserted negligence in both counts 1 and 2 of the third amended complaint; however, they differentiated the counts by specifying that count 1 was being brought pursuant to *res ipsa loquitur* (Doc. 53, p. 6). Genzyme seeks dismissal of count I because *res ipsa loquitur* is not a distinct theory of recovery separate from the negligence claim asserted in count II (Doc. 55, p. 4).

The doctrine of "*res ipsa loquitur*" permits an inference of liability on the part of the defendant if the plaintiff can demonstrate that certain conditions existed making it likely that the defendant was responsible for the injury. *Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 625 (7th Cir. 2019); *see also Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 649 (7th Cir. 2016) (describing *res ipsa loquitur* as "a shortcut to a negligence claim."). "*Res ipsa loquitur* describes not a substantive claim, but a manner of proceeding on that claim." *Ruark,* 916 F.3d at 625. To establish this inference, plaintiff must demonstrate: "(1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 642 (7th Cir. 2006); *see also Pullen v. BC Int'l Grp., Inc.*, No. 19 C 7810, 2020 WL 11772610, at *2 (N.D. Ill. June 2020) (quoting *Heastie v. Roberts*, 226 Ill. 2d 515 (2007) ("[T]he *res ipsa loquitur* doctrine is a species of circumstantial evidence.").

Because *res ipsa loquitur* is an evidentiary theory, not a separate cause of action, that may be used to prove negligence or strict liability, Count I will be dismissed. However, plaintiffs can rely upon this theory later in the litigation. *See In re Chicago Flood Litig.*, No. 93 C 1214, 1993 WL 278553, at *15 (N.D. Ill. July 20, 1993) (explaining that the question whether to dismiss a separately pleaded *res ipsa loquitur* count is "largely academic" because, even were the count dismissed, "plaintiffs would still be entitled to pursue their *res ipsa loquitur* theory under their negligence counts").

## II. Fraud

Genzyme alleged that plaintiffs did not plead fraud with the requisite particularity set forth in Rule 9 of the Federal Rules of Civil Procedure (Doc. 55). This argument is moot; however, as plaintiffs conceded in their response that the third amended complaint does not allege sufficient facts to sustain this claim (Doc. 57, p. 4). Accordingly, Count III[4] of the third amended complaint is dismissed.

## III. Statute of Limitations

Genzyme next argued that this complaint should be dismissed as untimely (Doc. 55, p. 7). While Illinois law specifies that an action for personal injuries must be filed within two years[5], plaintiffs argued in their response that the discovery rule delayed accrual of the action for purposes of the statute of limitations until the plaintiffs "knew or reasonably should have known" of their injuries (Doc. 57, p. 4). Plaintiffs also contended that the statute of limitations was an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure that should not be addressed in a 12(b)(6) motion to dismiss (*Id.*, p. 5).

There is no question that the initial DNA test occurred more than 34 years ago nor is there any doubt that the more recent DNA results from 2021 resulted in a contrary paternity outcome. Nevertheless, dismissal is not appropriate at this juncture. A plaintiff "need not anticipate and attempt to plead around affirmative defenses," including those pertaining to the statute of limitations. *Hyson USA, Inc.*

---

[4] As set forth *infra*, the parties erroneously referred to Count II; however, the third amended complaint clearly identified Count 3 as being brought pursuant to the Illinois Consumer Fraud Act (Doc. 53, p. 7).

[5] See 735 ILCS 5/13-202.

*v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). While the statute of limitations may be raised in a motion to dismiss 'if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense', see *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir.) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)), in this case, plaintiffs did not "affirmatively plead themselves out of court" for the Court to consider an affirmative defense in a motion to dismiss. *Hyson*, 821 F.3d at 939 (citations omitted).

Accordingly, as to the statute of limitations issue, Genzyme's motion to dismiss is denied.

## IV.   Proximate Cause

Genzyme's final argument asserted that plaintiffs could not prove that any of their alleged injuries were proximately caused by the erroneous DNA result. Indeed, Carrie was abused by her putative father (James Zumbahlen) who has since been incarcerated[6].

Proximate cause is an essential element of any negligence action. *Aalbers v. LaSalle Hotel Properties,* 206 N.E.3d 329, 337 (Ill.App. 2022).  A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. *Johnson v. Wal-Mart Stores, Inc.,* 588 F.3d 439, 441 (7th Cir. 2009) (*citing Crumpton v. Walgreen Co.,* 871 N.E.2d 905, 910 (Ill. App. 2007) Proximate cause is composed of two distinct requirements: legal

---

[6] According to the Illinois Department of Corrections, James Zumbahlen has been in custody since May 21, 2014 and has a projected parole date of March 21, 2030 following multiple convictions for predatory criminal sexual assault and aggravated criminal sexual abuse/victim < 13.

cause and cause in fact. *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068 (Ill. 1999).

Cause in fact is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee v. Chicago Transit Authority*, 605 N.E.2d 493, 502 (Ill. 1992). "When considering cause in fact, courts generally employ either the traditional 'but for' test or the 'substantial factor' test." *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1124 (Ill. 2015). "Under the 'but for' test, a defendant's conduct is not the cause of an event if the event would have occurred without it while under the 'substantial factor' test, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." *Id.* (cleaned up). Where reasonable minds could differ whether the defendant's conduct was of such a substantial factor in bringing about the plaintiff's injury is for the jury to decide. *Lee,* 605 N.E.2d 493, 502-503.

Legal cause exists where the injury was of a type that a reasonable person would foresee as a likely result of his or her conduct. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1128 (Ill. 2004). An injury can be caused by multiple sources wherein the negligence of each is a proximate cause of the injury. *Obert v. Saville,* 624 N.E.2d 928 (Ill.App. 1993).

Under Illinois law, "the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *See Beretta*, 821 N.E.2d 1099 at 1128 (citing *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 854 (Ill.

2001) (Harrison, C.J., concurring) ("[W]here the facts are undisputed and reasonable men could not differ as to the inferences to be drawn from those facts, proximate cause may be determined as a matter of law.")). In other words, normal standards apply to a motion to dismiss for lack of causation. The Court will not resolve factual disputes at this stage, but when the alleged facts fail to establish proximate causation, then dismissal is appropriate. *See Dundee Cement Co. v. Chem. Lab'ys Inc.,* 712 F.2d 1166, 1168–72 (7th Cir. 1983) (affirming the dismissal of tort claims for lack of proximate causation).

As stated *infra,* a motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead tests whether the claimant has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Plaintiff has stated a claim for negligence. Additionally, this Court cannot state, with certainty, that there would be no resulting damages from Genzyme's conduct, even without the criminal acts of James Zumbahlen. Therefore, the motion is denied with respect to proximate cause, but the Court notes that defendant can raise this issue at a later date if discovery is conclusive.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss regarding Counts I (Doc. 53, ¶¶ 27-30) and III (Doc. 53, ¶¶ 33-36) of plaintiffs' Third Amended Complaint, but **DENIES** the remaining arguments regarding proximate causation and the statute of limitations. Accordingly, Counts I and III are dismissed and Genzyme is **ORDERED** to answer Count II of the third amended complaint

within 21 days, or by January 11, 2024.

**IT IS SO ORDERED.**

**DATED:  December 21, 2023**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN
U.S. District Judge**
